JUNE GREEN, Plaintiff-Appellant, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 85—1024

Opinion filed January 13, 1988.

William S. Shapiro, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Karen Konieczny, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, June Green, appeals from an order of the trial court affirming the administrative decision of defendant, Illinois Department of Public Aid, which found Green ineligible for medical assistance. We reverse and remand with directions.

On May 9, 1983, while her husband was a patient in South Suburban Hospital, Green applied for medical assistance on his behalf under the Illinois Aid to the Aged, Blind and Disabled Medical Assistance No Grant program (AABD-MANG) of the Illinois Public Aid Code (Code) (Ill. Rev. Stat. 1983, ch. 23, par. 3—1 *et seq.*). On May 16, 1983, Green met with a caseworker for the Cook County Department of Public Aid (county department) regarding her application. Thereafter, on May 18, 1983, the county department denied Green's application. In a letter, the county department informed Green that her application for medical assistance was "[d]enied per policy statement contained in Manual Chapter PO—505, explanation: value of [your] assets exceeds [the] maximum allowed by agency standards."

Green appealed the denial of her application to the Illinois Department of Public Aid (Department). (Ill. Rev. Stat. 1983, ch. 23, par. 11—8 *et seq.*) Green's husband died on June 24, 1983. Thereafter, an administrative hearing was conducted via telephone on July 22, 1983. Green was not represented by counsel.

At the hearing, Vera Shaw, a county department supervisor, who did not handle Green's application, testified regarding Department regulations. Shaw explained that pursuant to Department regulations, Green's husband would only be eligible for AABD-MANG if, as husband and wife, Green and decedent's "non-exempt assets" totalled less than $2,250. According to Shaw's testimony, Green and the decedent's nonexempt assets amounted to $2,551.93. Therefore, their nonexempt assets exceeded the AABD-MANG eligibility requirement of $2,250 by $301.93. As a result, Green and decedent were not financially eligible for the AABD-MANG program. However, the figures utilized by the county department caseworker during the May 16, 1983, meeting with Green indicate that Green and decedent's nonexempt assets totalled $2,276.36, an excess of $26.36 over the AABD-MANG eligibility requirement. The record does not explain this discrepancy. In response to a question by the hearing officer, Shaw further testified that she was not familiar with a Department provision which allows an applicant to reduce nonexempt assets to comply

with the Department's eligibility requirement.

Green also testified at the hearing. According to Green, prior to the Department's rejection of her application, she had attempted to obtain a reduction in the decedent's life insurance policy through the Veteran's Administration. However, Green was advised by the administration that it did not recommend such a reduction due to the fact that no premiums would have to be paid during decedent's hospitalization. Therefore, it would defer action on Green's request for 30 days in the event that she wished to change her decision. Green's application was denied prior to the expiration of the 30-day period.

Cheryl Whitney, a financial counselor at South Suburban Hospital, also testified on Green's behalf. According to Whitney, Green is responsible for approximately $150,000 in medical expenses incurred by the decedent prior to his death. Whitney questioned why Green could not apply a portion of her nonexempt assets to the outstanding medical bills and thereby qualify for assistance.

On August 12, 1983, the Department affirmed the decision of the county department and found Green ineligible for AABD-MANG assistance. Thereafter, Green filed a complaint for administrative review in the trial court. The trial court affirmed the Department's decision. This appeal followed.

On appeal, Green argues that: (1) the Department's determination that she was ineligible for AABD-MANG assistance was against the manifest weight of the evidence; (2) the Department improperly applied the provisions of the Code and Departmental regulations to deny her medical assistance; and (3) the Department's asset reduction policy is applied in an unconstitutional manner. However, prior to our analysis of Green's contentions on appeal, we believe that a review of the relevant provisions of the Code and the Department's regulations is pertinent to an understanding of the issues raised in this appeal.

The purpose of the Code is to "assist in the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all the people of this State." (Ill. Rev. Stat. 1985, ch. 23, par. 1—1.) To facilitate this purpose, the Code requires that every person administering any of its provisions perform his or her duties in the manner necessary to secure for every applicant the aid and services to which the person may be entitled. Ill. Rev. Stat. 1985, ch. 23, par. 11—2.

Eligibility for medical assistance under the AABD-MANG program is set forth in section 5—2 of the Code, which provides:

"Persons otherwise eligible for basic maintenance under Articles III and IV but who fail to qualify thereunder on the basis

of need, and who have insufficient income and resources to meet the costs of necessary medical care [are eligible for medical assistance]." (Ill. Rev. Stat. 1985, ch. 23, par. 5—2(2).)

Section 5—2 further provides:

"The Department shall by rule establish the amounts of assets to be disregarded in determining eligibility for medical assistance, for which federal reimbursement is available under Title XIX of the Social Security Act. The amount of assets *** of a married couple to be disregarded shall not be less than $2,250." Ill. Rev. Stat. 1985, ch. 23, par. 5—2(7)(c).

The Department's eligibility requirements and the formulas to be used to determine financial compliance for AABD-MANG assistance are set forth in the Department's AABD Categorical Assistance Manual (Manual), chapter 505, "Financial Factors Eligibility." According to the Manual, eligibility is determined by the amount of an applicant's nonexempt assets. A nonexempt asset is an asset not considered in determining eligibility for medical assistance. Section 505.1 delineates, among others, the following as exempt assets: (1) homestead property; (2) clothing and personal effects; (3) household furnishings; (4) a motor vehicle(s) except those used primarily for recreational purposes; and (5) a life insurance policy with a total face or cash value of $1,000 or less. To be eligible for AABD-MANG, a married person must not possess more than $2,250 in nonexempt assets. The $2,250 eligibility figure is commonly referred to as the asset disregard level.

However, the Department has, as part of its financial eligibility requirements, a provision which allows an applicant who has assets in excess of the asset disregard level to reduce these assets via an allowable transfer of a portion of the money to payment of outstanding medical bills. According to the Department, this policy was clarified in an Illinois Department of Public Aid Manual Release No. 83.2 to encourage applicants to apply nonexempt assets toward outstanding medical expenses. Such an application of nonexempt assets toward outstanding medical expenses is termed a "transfer for fair market value" and may be made before a decision on eligibility is reached.

On appeal, Green essentially argues that the Department's notification procedure regarding the availability of the asset reduction provision violates applicants' due process rights. Specifically, Green contends that while Department caseworkers are required to notify applicants with nonexempt assets exceeding the asset disregard level of the opportunity to reduce these assets (*Brengola-Sorrentino v. Department of Public Aid* (1984), 129 Ill. App. 3d 566, 472 N.E.2d 877),

notification of this right without an explanation of the procedure to be followed to achieve such a reduction is insufficient.

■ Basic due process requires that any form of public aid be administered in a manner that insures fairness regarding both eligibility and benefits and also remains free of the risk of arbitrary decision making. (*Brengola-Sorrentino*, 129 Ill. App. 3d at 572-73, 472 N.E.2d at 881; *Carey v. Quern* (7th Cir. 1978), 588 F.2d 230, 232.) This requirement creates a concomitant duty on the part of those administering such programs to provide applicants with notice of available benefits. *Brengola-Sorrentino*, 129 Ill. App. 3d at 574, 472 N.E.2d at 882; *Gonzalez v. Blum* (1985), 127 Misc. 2d 558, 560, 486 N.Y.S.2d 630, 633.

The Department, however, argues that pursuant to *Brengola-Sorrentino*, its caseworkers are only required to make the availability of asset reduction known. The Department therefore contends that its caseworkers have neither the obligation to specifically advise AABD-MANG applicants of the level of reduction necessary to qualify for assistance, nor are caseworkers required to inform applicants of how to permissibly reduce excess nonexempt assets to the appropriate disregard level. As a result, because Green knew of the asset reduction program and attempted to reduce her life insurance policy, the Department's decision must be affirmed. We disagree.

In *Brengola-Sorrentino*, the county department denied an applicant medical assistance under the Aid to the Medically Indigent program due to nonexempt excess assets. The applicant did not receive notice of the Department's asset reduction policy. Therefore, the plaintiff was not aware that she could reduce her nonexempt excess assets to the appropriate disregard level by applying a portion of these assets to her outstanding medical bills. The county department's decision was upheld by the Illinois Department of Public Aid and the trial court affirmed the Department's holding. However, on appeal, this court determined:

> "Only when the Department advises the applicant of the asset reduction policy, thereby allowing the applicant the opportunity to apply his excess assets to the then outstanding medical bills, is the policy fairly administered." (*Brengola-Sorrentino*, 129 Ill. App. 3d at 574, 472 N.E.2d at 882.)

We believe that implicit in this court's holding in *Brengola-Sorrentino* is a requirement that a public aid applicant receive informed notice of the availability of the Department's asset reduction program, rather than mere notice of the provisions's existence.

Notice of the existence of a right is necessary for the protection

and enforcement of that right. However, mere notice of a right's existence, without any further knowledge of how to achieve such a right, renders the right both illusory and unavailable. Clearly, there is a human tendency, even among those who are experienced and knowledgeable in the ways of bureaucracies, to assume that an action taken by a government agency in a pecuniary transaction is correct. (*Vargas v. Trainor* (7th Cir. 1974), 508 F.2d 485, 490.) We therefore believe that mere notice of the existence of the asset reduction provision to persons who are aged, blind, or disabled and in need of medical assistance because of an impaired financial condition is insufficient. Were we to adopt the Department's argument concerning adequate notice, only the aggressive would receive their due process right to utilize the asset reduction provision. As a result, the individuals whom the provision is designed to assist, specifically, the aged and physically handicapped who are often disinclined or unable to affirmatively seek out the procedures they must follow to receive benefits, would instead remain in the dark and suffer the denial of the medical assistance to which they would have been entitled. See *Vargas*, 508 F.2d at 490.

■ Therefore, we believe that in order for the Department's notice of the asset reduction provision to satisfy the requirements of due process and fundamental fairness, applicants must be advised of the provision's procedural requirements. Specifically, an applicant must be informed: (1) of the asset disregard level; (2) the amount that the applicant's nonexempt assets exceed the appropriate disregard level; (3) that the applicant may apply these excess nonexempt assets to outstanding medical bills to reduce the assets to the appropriate disregard level; and (4) the procedure necessary to achieve the allowable fair market value transfer of the excess nonexempt assets. Moreover, once the applicant is duly informed of the aforesaid, the Department must provide the applicant with appropriate forms and a period of time in which to effect the transfer of assets before ruling on the application for medical assistance.

In the instant case, Green was attempting to reduce a Veteran's Administration life insurance policy with a cash value of $1,700, already discounted to a $700 nonexempt asset through the Department's exempt asset provision, in order to comply with the asset disregard level. Such an action on Green's part was wholly unnecessary. Here, the record reflects that while the caseworker handling Green's application was aware of her attempted reduction, she did not advise Green of a more expedient and appropriate way of meeting the asset disregard amount of $2,250. Additionally, the testimony of the caseworker's supervisor, Shaw, indicates that even she was unaware of

the Department's asset reduction provision. Clearly, while Green may have had "notice" of the Department's asset reduction provision, she was never properly informed of her right to reduce her nonexempt assets through medical bill payment.

We therefore find that in the present case, the Department violated Green's due process rights by failing to properly advise her of the asset reduction provision and thereby precluding her from becoming eligible for AABD-MANG medical assistance. Under these circumstances, Green must be afforded with the opportunity to apply anew for medical assistance. In the event that Green so applies, we order the Department to process her application pursuant to all applicable regulations and in conformity with this opinion, as if no prior determination of ineligibility had been rendered. See *Brengola-Sorrentino*, 129 Ill. App. 3d at 574, 472 N.E.2d at 882-83.

Accordingly, the judgment of the trial court affirming the Department's decision is reversed; the Department's finding of ineligibility is vacated, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

WHITE, P.J., and McNAMARA, J., concur.